UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LZ 1503, INC., | ) |
| Plaintiff, | ) ) ) |
| | ) No. 17 C 2222 |
| v. | ) ) Chief Judge Rubén Castillo |
| FEDEX GROUND PACKAGE SYSTEM INC., | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff LZ 1503, Inc. ("LZ") brings this action against Defendant FedEx Ground Package System, Inc. ("FEG") alleging breach of contract, breach of the duty of good faith and fair dealing, and promissory estoppel. (R. 17-1, Second Am. Compl. ¶¶ 14-48.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), FEG moves to dismiss Counts II through V of LZ's second amended complaint for failure to state a claim. (R. 22, Mot.) For the reasons stated below, FEG's motion is granted.

## RELEVANT FACTS

LZ is an Illinois corporation with its principal place of business in Illinois. (R. 17-1, Second Am. Compl. ¶ 1.) It owns and operates trucking equipment. (*Id.*) FEG is a Delaware corporation with its principal place of business in Pennsylvania, and it provides small package transportation and delivery services throughout the United States. (*Id.* ¶¶ 2, 5.) FEG operates a network of nationwide terminals and engages truck owners and operators to transport packages between FEG terminals and FEG customer destinations. (*Id.* ¶ 5.)

LZ and FEG allegedly entered into a "linehaul operating agreement" (the "Line-haul Agreement") that requires LZ to arrange for the movement of FEG customer trailers between FEG facilities and FEG customer facilities. (*Id.* ¶ 7; R. 17-2, Ex. 1 ¶ 1.)

In addition to the type of work contemplated under the Line-haul Agreement, FEG enters into contracts with truck owners and operators to perform pick-up and delivery ("P&D") services. (R. 17-1, Second Am. Compl. ¶ 27.) P&D services involve the pick-up and delivery of packages at regular stops and at the same time each day on a more local basis than the line-haul work. (*Id.*) FEG terminal managers enter into oral agreements with local truck owners and operators to perform P&D services. (*Id.*)

Beginning in 2015, FEG's Carol Stream, Illinois, terminal manager allegedly entered into an oral agreement with LZ, which required LZ to perform P&D work for J.S. Paluch, an FEG customer. (*Id.* ¶ 28.) Pursuant to the alleged agreement, LZ regularly performed P&D work for J.S. Paluch from the Carol Stream terminal. (*Id.*)

FEG was in the process of building a new terminal in Niles, Illinois, and at some point in late 2015, FEG had almost finished building the new terminal. (*See id.* ¶¶ 11, 15.) At a meeting on January 30, 2016, FEG's Niles terminal manager announced to Carol Stream-based truck owners and operators that some P&D work would be moved from the Carol Stream terminal to the new Niles terminal. (*Id.* ¶ 29.) FEG's Carol Stream terminal manager, Jennifer Davies, allegedly said at the same meeting that Carol Stream-based truck owners and operators would be given "the first opportunity" to redeem any of their P&D runs that were being transferred to the Niles terminal. (*Id.*) LZ claims that Davies also encouraged it to obtain more P&D work at Carol Stream that could then be transferred to Niles. (*Id.*) Allegedly relying on such encouragement, in March of 2016, LZ purchased from another truck owner and operator the contractual rights to

2

perform two more P&D runs from the Carol Stream terminal: the "FedEx Trade" and "Love Sac" runs. (*Id.* ¶¶ 28, 45.)

LZ claims that FEG transferred the J.S. Paluch, FedEx Trade, and Love Sac P&D runs to the Niles terminal, (*see id.* ¶¶ 30, 33, 37, 41), but when LZ sought to redeem those runs, the Niles terminal manager allegedly refused to give LZ any P&D work. (*See id.* ¶¶ 31, 37, 41.) LZ claims the three P&D runs it lost were given instead to other truck owners and operators that were previously performing P&D runs from the Carol Stream terminal and had not lost any of their Carol Stream runs that were transferred to Niles. (*Id.* ¶ 31.)

## PROCEDURAL HISTORY

On February 15, 2017, LZ filed the present action in the Circuit Court of Cook County, Illinois. (R. 1-1, Ex. A.) On March 22, 2017, FEG removed the case to this Court on the basis of diversity jurisdiction. (R. 1, Notice of Removal.) On April 12, 2017, LZ amended its complaint. (R. 8, First Am. Compl.) FEG moved to dismiss the amended complaint, and, in response, LZ filed a second amended complaint. (*See* R. 11, Mot.; R. 17-1, Second Am. Compl.; R. 20, Min. Entry.)

The second amended complaint alleges five counts against FEG: Count I, which claims breach of the Line-haul Agreement; Counts II through IV, which allege breach of oral contracts related to to the J.S. Paluch, FedEx Trade, and Love Sac P&D work; and Count V, which asserts promissory estoppel based on the Carol Stream terminal manager allegedly encouraging LZ to obtain more Carol Stream P&D work that could then be transferred to the Niles terminal. (R. 17-1, Second Am. Compl. ¶¶ 26-48.)

On July 3, 2017, FEG filed a motion to dismiss Counts II through V of the second amended complaint, challenging only the claims related to the P&D work. (R. 22, Mot.; R. 23,

3

Mem.) FEG's motion argues that the Court should dismiss Counts II through V because LZ fails to allege that FEG ever offered or promised any P&D work to LZ. (*Id.* at 3-5.) FEG also submits that LZ fails to plead sufficient facts supporting the existence of oral contracts for the P&D work, such as the exact person who entered into the contracts on FEG's behalf, the exact promises made, the consideration given, or the material terms of the alleged oral contracts. (*Id.* at 5-6.) Lastly, FEG asserts that, under Pennsylvania law, LZ cannot maintain a claim for breach of the duty of good faith and fair dealing as a separate basis for liability because LZ has alleged the existence of an oral contract covering the same subject matter. (*Id.* at 6-7.)

In response, LZ argues that it pleads all of the essential elements for its breach of oral contract claims and enough factual allegations to survive FEG's motion to dismiss. (R. 28, Opp'n at 3-7.) LZ also maintains that its breach of good faith and fair dealing claims are not alleged as independent breaches separate from its oral contracts with FEG, and that the Court should therefore decline to dismiss LZ's breach of good faith and fair dealing claims. (*Id.* at 7-8.) Finally, LZ argues that it adequately pleads the requisite elements for its promissory estoppel claim as well as enough supporting facts. (*Id.* at 8-9.) FEG's reply repeats the arguments in its motion to dismiss, and offers grounds to distinguish the legal authority and arguments LZ relies upon in its response to the motion to dismiss. (*See* R. 33, Reply.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* A complaint must provide "a 'short and plain statement of the claim

4

showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (citation omitted). " 'Plausibility' " in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.    LZ's Breach of Contract and Duty of Good Faith and Fair Dealing Claims**

Counts II through IV of LZ's second amended complaint allege that LZ had enforceable oral contracts with FEG to perform the J.S. Paluch, FedEx Trade, and Love Sac P&D work, and that FEG breached these contracts by refusing to allow LZ to perform that P&D work from the Niles terminal. (R. 17-1, Second Am. Compl. ¶¶ 32-33, 36-37, 40-41.) Each count also claims that, "[t]o the extent FEG's terminal manager had discretion in choosing" the truck owner and operator who would perform those P&D runs at the Niles terminal, FEG breached an "obligation of good faith and fair dealing by refusing to award" LZ those P&D runs at the Niles terminal. (*Id.* ¶¶ 33, 37, 41.)

Both parties apply Pennsylvania's substantive law in their analysis, (*see* R. 23, Mem. at 3-4, 6; R. 28, Opp'n at 3, 5-9; R. 33, Reply at 2-8), and neither party objects to the other's application of Pennsylvania law, (*see* R. 28, Opp'n; R. 33, Reply). The Court, therefore, will

apply Pennsylvania's substantive law in its analysis. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (citation omitted)); *Ferris Mfg. Corp. v. Carr*, No. 14 C 04663, 2015 WL 279355, at *2 (N.D. Ill. Jan. 21, 2015) ("But when the [choice of law] issue is undisputed, the court may apply the law cited by the parties.").

"To state a claim for breach of contract under Pennsylvania law, a claimant must allege: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages from the breach." *AscellaHealth, LLC v. CRx Health Servs., LLC*, No. CIV.A. 14-5949, 2015 WL 1573395, at *3 (E.D. Pa. Apr. 9, 2015). "Although every term of a contract need not be stated in complete detail, every element must be specifically pleaded." *Am. Auto. Ins. Co. v. L.H. Reed & Sons, Inc.*, No. 3:14CV1911, 2015 WL 1566224, at *4 (M.D. Pa. Apr. 8, 2015). "Clarity in the pleadings is 'particularly important where an oral contract is alleged.'" *Id.* (citation omitted); *see also Pratter v. Penn Treaty Am. Corp.*, 11 A.3d 550, 563 (Pa. Commw. Ct. 2010) ("Where a plaintiff seeks to recover on an oral agreement, it is particularly important that the pleading at least identify in as specific detail as possible the date of the agreement and the individuals involved."). To plead the existence of a contract under Pennsylvania law, LZ must plead "(1) manifestation of intent to be bound by the terms of the agreement; (2) sufficiently definite terms; and (3) an agreement supported by adequate consideration." *Int'l Strategic Cancer All., LLC v. Stichting Katholieke Universiteit*, No. CV 17-2024, 2017 WL 4681789, at *4 (E.D. Pa. Oct. 18, 2017).

LZ alleges that it purchased the rights to perform the Love Sac and FedEx Trade P&D work from another truck owner and operator, whereas, with respect to the J.S. Paluch P&D work, LZ alleges that it directly contracted with FEG since 2015. (R. 17-1, Second Am. Compl. ¶¶ 28,

45.) Given the different factual allegations as to these claims, the Court, with the above legal principles in mind, first addresses the allegations as to the J.S. Paluch P&D work and then separately address LZ's claims related to the FedEx Trade and Love Sac P&D work.

### A.     J.S. Paluch P&D Work (Count II)

While LZ pleads that it "had an enforceable oral contract for the J.S. Paluch P&D run" from the Niles terminal, (*id.* ¶ 32), the Court must look past this conclusory allegation and determine whether LZ alleges enough facts to state a breach of contract claim that is plausible on its face. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) ("[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion."). LZ claims that FEG terminal managers enter into oral agreements for P&D work with truck owners and operators whereby they "perform P&D runs as necessary." (R. 17-1, Second Am. Compl. ¶ 27.) LZ alleges that, sometime in 2015, an FEG representative "requested" that LZ perform the J.S. Paluch P&D work at the Carol Stream terminal and LZ accepted the offer. (*Id.* ¶ 28.) LZ then allegedly performed P&D services regularly from the Carol Stream terminal. (*Id.*) There is no allegation that the oral agreement for the Carol Stream P&D work also covered P&D work from the Niles terminal. Instead, LZ alleges that FEG's Carol Stream terminal manager "stated that Carol Stream based [truck] owner/operators, whose P&D runs where being transferred to the Niles terminal, would be given the first opportunity to place an extra tractor at the Niles facility and perform P&D work." (*Id.* ¶ 29.) LZ also pleads that FEG's Carol Stream manager "encouraged owner/operators in Carol Stream, and LZ specifically, to obtain more P&D work that could be transferred to Niles." (*Id.*)

As noted above, LZ alleges the existence of an oral contract to perform the J.S. Paluch P&D work from the Carol Stream terminal, *not the Niles terminal*. At issue then is whether the

7

above allegations, and the second amended complaint as a whole, plead enough facts to plausibly state that a contract existed between the parties for the J.S. Paluch P&D work *from the Niles terminal*. The Court concludes that LZ fails to allege any consideration for an agreement to transfer P&D work from the Carol Stream terminal to the Niles terminal or sufficiently definite or essential terms of any such agreement.

"[C]onsideration consists of a benefit to the promisor or a detriment to the promisee and must be bargained for as the exchange of the promise." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, No. 07-CV-04798, 2008 WL 4444253, at *6 (E.D. Pa. Sept. 30, 2008) (citation and internal quotation marks omitted). LZ alleges that Carol Stream truck owners and operators "would be given the first opportunity to place an extra tractor at the Niles facility to perform P&D work" and that FEG "encouraged" them to obtain more Carol Stream P&D work that "could be transferred to Niles."(R. 17-1, Second Am. Compl. ¶ 29.) There is no allegation, however, that the parties bargained for or exchanged anything in response to FEG's representations, or that FEG incurred or would incur any benefit as a result of its representations to Carol Stream truck owners and operators. Additionally, LZ merely alleges that it "sought to move its tractors to Niles," (*Id.* ¶ 31), but there is no allegation that it in fact moved its tractors to Niles, performed any Niles P&D work, or otherwise incurred or promised to incur any detriment in exchange for FEG's alleged representations to Carol Stream truck owners and operators. LZ argues that there was an ongoing agreement for the P&D work, (R. 28, Opp'n at 4-7), but this ongoing agreement was alleged to cover P&D work "as necessary" from the "Carol Stream terminal," (R. 17-1, Second Am. Compl. ¶¶ 27-28). Without any alleged agreement, supported by consideration, to perform P&D work at Niles or transfer Carol Stream P&D work to Niles, this alleged ongoing relationship for P&D work at Carol Stream cannot support a breach of contract claim for FEG's

8

alleged failure to allow LZ to perform P&D work out of the Niles terminal. Consequently, the Court will dismiss Count II due to LZ's failure to plead any consideration supporting an agreement between the parties.

Count II also fails to state a claim because LZ does not plead any essential or sufficiently definite terms of the alleged oral contract to perform P&D work for J.S. Paluch from the Niles terminal. Under Pennsylvania law, the essential terms of a contract " 'include time or manner of performance and price to be paid,' " and it "is otherwise undecided which additional contractual provisions may be deemed 'essential' at the motion to dismiss stage." *Horse Soldier, LLC v. Tharpe*, No. 1:13-CV-2892, 2014 WL 5312823, at *5 (M.D. Pa. Oct. 17, 2014). Terms are sufficiently definite "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Int'l Strategic Cancer All.*, 2017 WL 4681789, at *4 (citation omitted).

LZ's second amended complaint alleges no essential contract terms, much less sufficiently definite terms, such as the time or manner of performance and the price for FEG's transfer of P&D work from Carol Stream to Niles. Instead, LZ's allegations are limited to details about the P&D work from the Carol Stream terminal. (*See, e.g.*, R. 17-1, Second Am. Compl. ¶ 28; R. 28, Opp'n at 3-4 (arguing that an ongoing relationship existed for Carol Stream P&D work, not Niles P&D work, and that LZ "would be given *the first opportunity* to place an extra tractor at the Niles facility and perform P&D work" (emphasis added)).) At bottom, LZ alleges that FEG afforded it an "opportunity" to recoup P&D work at Niles, but this falls short of pleading the existence of an agreement requiring FEG to transfer LZ's J.S. Paluch work from the Carol Stream terminal to the Niles terminal. LZ therefore fails to allege essential or sufficiently

9

definite terms that would allow the Court to reasonably infer the existence of a contract between the parties for the J.S. Paluch P&D work out of the Niles terminal.

Finally, Count II cannot survive a motion to dismiss to the extent it relies on a theory of breach of the duty of good faith and fair dealing. (*See, e.g.*, R. 17-1, Second Am. Compl. ¶¶ 33, 37, 41.) Under Pennsylvania law, the duty of good faith and fair dealing merely functions as "an interpretive tool" to aid courts in evaluating breach of contract claims and "is never divorced from specific clauses of the contract." *Tuno v. NWC Warranty Corp.*, 552 F. App'x 140, 144 (3d Cir. 2014) (citation and internal quotation marks omitted). "The only basis upon which [the duty of good faith and fair dealing] could be arguably applicable is if a contract existed." *Quinn v. Traditions of Am., L.P.*, No. CIV.A. 10-2462, 2010 WL 3239325, at *4 (E.D. Pa. Aug. 16, 2010). Because LZ fails to sufficiently allege the existence of a contract for the J.S. Paluch P&D work out of the Niles terminal, there can be no duty of good faith and fair dealing for that work. *See Tuno*, 552 F. App'x at 144; *Quinn*, 2010 WL 3239325, at *4. The Court, therefore, dismisses Count II in its entirety.

### B. FedEx Trade and Love Sac P&D Work (Counts III and IV)

The allegations as to the FedEx Trade and Love Sac P&D work are identical to the J.S. Paluch P&D work allegations, except that LZ alleges that it purchased the rights to perform this work from another truck owner and operator instead of contracting directly with FEG. (R. 17-1, Second Am. Compl. ¶ 28; *see also* R. 28, Opp'n at 4 ("The only material difference between Count II and Counts III and IV is that, in the latter two, LZ purchased the P&D contract rights from another owner/operator and performed P&D work for FEG on those two acquired routes.").) These different allegations do not plead any facts related to consideration or essential terms of an oral agreement to perform P&D work from the Niles terminal. Thus, as with the

alleged oral contracts to perform J.S. Paluch P&D work from the Carol Stream terminal, LZ fails to allege that the FedEx Trade and Love Sac P&D work extended to the Niles terminal or that there was any consideration supporting FEG's representations concerning the possibility of transferring the FedEx Trade and Love Sac P&D work to Niles. Likewise, LZ pleads no essential terms or sufficiently definite terms of an agreement to transfer to the Niles terminal LZ's alleged rights to perform the FedEx Trade and Love Sac P&D work.

Compared to the J.S. Paluch P&D work, it is even less plausible that an oral contract existed to transfer the FedEx Trade and Love Sac P&D work to Niles. FEG allegedly "encouraged" LZ to obtain more P&D work that could be transferred to Niles on January 30, 2016, (R. 17-1, Second Am. Compl. ¶¶ 29), but FEG alleges that it did not acquire the FedEx Trade and Love Sac P&D work until March of 2016, or well after FEG's January 30 statements. (*Id.* ¶ 28.) Therefore, LZ does not allege that it had rights to the FedEx Trade and Love Sac P&D work when FEG allegedly made the statements on January 30, 2016, concerning the possible transfer of P&D work from Carol Stream to Niles. Without any alleged rights to the FedEx Trade and Love Sac P&D work at that time, it is not plausible that LZ would have authority to enter into a contract with FEG to transfer another truck owner and operator's P&D work to Niles. *See, e.g., Clark Res., Inc. v. Verizon Bus. Network Servs., Inc.*, No. 1:10-CV-1119, 2012 WL 1339697, at *6-*9 (M.D. Pa. Apr. 18, 2012) (ruling that there could be no contract between plaintiff and defendant when the person that attempted to enter into a contract on defendant's behalf had no authority to do so). Accordingly, Counts III and IV fail to state a claim for breach of an oral contract.

Because LZ has not alleged an enforceable contract for the FedEx Trade and Love Sac P&D work out of the Niles terminal, the Court also dismisses its breach of the duty of good faith

11

and fair dealing claims concerning the same P&D work. *See JHE, Inc. v. Se. Penn. Transp. Auth.*, No. 1790 NOV.TERM 2001, 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17, 2002) ("[A] claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself."). Counts III and IV are therefore dismissed in their entirety.

## II.    LZ's Promissory Estoppel Claim (Count V)

FEG argues that LZ's claim for promissory estoppel fails because LZ does not allege an express promise by FEG to transfer LZ's FedEx Trade and Love Sac P&D work from the Carol Stream terminal to the Niles terminal. (R. 33, Reply at 7-8.) LZ does not dispute this characterization of the second amended complaint, but argues that even though it does not plead an express promise, it "pleads the facts demonstrating such a promise." (R. 28, Opp'n at 9.) Thus, the Court must determine whether LZ has failed to allege an express promise by FEG to transfer LZ's FedEx Trade and Love Sac P&D runs to Niles, and, if so, whether any such failure is fatal to LZ's promissory estoppel claim.

"In order to state a claim for promissory estoppel in Pennsylvania a plaintiff must allege the following: 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *CMR D.N. Corp. v. City of Philadelphia*, No. CIV.A. 07-1045, 2008 WL 4055823, at *2 (E.D. Pa. Aug. 28, 2008) (citation and internal quotation marks omitted). "An implied promise is insufficient to support a claim for promissory estoppel." *Constar, Inc. v. Nat'l Distrib. Ctrs., Inc.*, 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000). "Courts must be careful to avoid applying the doctrine to vague representations or puffery, and thus must look to see if the alleged

12

promise is explicit enough to induce action and if the proposed action be of 'definite and substantial character.' " *Vigilante v. Statharos*, No. 08-CV-3408, 2009 WL 398781, at *2 (E.D. Pa. Feb. 18, 2009) (citation omitted).

LZ's promissory estoppel claim is based on an alleged promise by FEG to transfer LZ's FedEx Trade and Love Sac P&D work to Niles if LZ obtained more Carol Stream P&D work. (R. 17-1, Second Am. Compl. ¶ 48.) LZ alleges, however, that FEG's Carol Stream terminal manager merely "encouraged owner/operators in Carol Stream, and LZ specifically, to obtain more P&D work that *could be* transferred to Niles." (*Id.* ¶ 29 (emphasis added).) LZ extrapolates from these allegations the following promise, which forms the basis of its promissory estoppel claim: "if you get more Carol Stream runs, FEG will give you these runs at Niles." (*See id.* ¶ 48.) Such an implied or extrapolated promise cannot support a promissory estoppel claim under Pennsylvania law. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F. Supp. 2d 526, 535 (M.D. Pa. 2006), *aff'd*, 533 F.3d 162 (3d Cir. 2008) ("[I]mplied promises are not enough, and [plaintiff] has not alleged a specific promise [defendant] made to it."). Nor can the Court reasonably infer the existence of such a promise because FEG's alleged representations are plainly a promise to obtain more work that "could be," but not would be, transferred to Niles. (*See* R. 17-1, Second Am. Compl. ¶ 29.) Because LZ premises its promissory estoppel claim on an alleged promise to transfer P&D work from Carol Stream to Niles, (*id.* ¶ 48), but LZ does not plausibly allege any express promise to that effect, the Court dismisses Count V. This dismissal is expressly without prejudice because this count, unlike the other counts this Court has dismissed, might be able to be repleaded with additional facts.

## CONCLUSION

For the foregoing reasons, FEG's motion to dismiss (R. 22) is GRANTED, and the Court dismisses Counts II through V of LZ's second amended complaint (R. 17-1).

The parties shall appear for a status hearing on November 29, 2017, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: October 31, 2017**